***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
3. On July 10, 2006, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and an employee-employer relationship existed between plaintiff and defendant-employer.
4. The carrier on the risk was United States Fire Insurance.
5. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on July 10, 2006, resulting in multiple rib fractures.
6. Plaintiff's average weekly wage at the time of the injury was $1,153.85, yielding the maximum compensation rate for 2006 in the amount of $730.00.
7. Plaintiff continued his employment with defendant-employer through the date of his termination on or about September 17, 2006.
8. At and subsequent to the hearing before the Deputy Commissioner, the parties submitted the following stipulated exhibits:
 a. Stipulated Exhibit No. 1 — Pre-Trial Agreement
 b. Stipulated Exhibit No. 2 — Medical records
 c. Stipulated Exhibit No. 3 — Employment file
 d. Stipulated Exhibit No. 4 — Plaintiff's responses to defendants' discovery
 e. Stipulated Exhibit No. 5 — Defendants' responses to plaintiff's discovery
 f. Stipulated Exhibit No. 6 — Job search records *Page 3 
 g. Stipulated Exhibit No. 7 — Industrial Commission filings
 h. Stipulated Exhibit No. 8 — Independent medical evaluation report from Complex Medical Evaluations.
9. The issues before the Commission are whether plaintiff was entitled to temporary total disability benefits subsequent to his termination on September 17, 2006; and whether plaintiff's current disability and need for medical care, if any, are causally related to the injury by accident on July 10, 2006.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 68 years old, with a high school education. He became employed with defendant-employer on or about June 7, 2006, as an assistant superintendent. Prior to plaintiff's employment with defendant-employer, plaintiff had been employed in the construction industry for approximately 50 years. Most recently, he was a co-owner of Enterprise Builders Group from January 2000 through January 2005. Plaintiff had no recorded employment from January 2005 through the date he began employment with defendant-employer on or about June 7, 2006.
2. Plaintiff testified that the assistant superintendent has the responsibility of "running the show" out in the field. Plaintiff was responsible for supervising the work and making sure that the buildings were built in accordance with the plans. Specifically, plaintiff was responsible for setting the schedule, managing the labor force, overseeing the quality of the work, and buying materials.
3. An assistant superintendent job description was submitted, which outlined the *Page 4 
primary job duties and responsibilities for the position. James Ford, general superintendent with defendant-employer, reviewed the assistant superintendent job description and agreed it was an accurate job description. According to Mr. Ford, the primary role of the assistant superintendent is to serve as a supervisor out in the field and to make sure the project is completed in accordance with the plans. The job of an assistant superintendent does not require lifting.
4. The job site plaintiff worked on was a 394-unit apartment complex being built in Cary, North Carolina. The general superintendent was James Ford, whose office is located in Texas. The project manager was Dennis Rossi and the project superintendent was Dale Rea. Plaintiff reported directly to Mr. Rea.
5. Plaintiff sustained an admittedly compensable injury by accident on July 10, 2006. As plaintiff was taking pictures of building supplies stored on site, he stepped backwards into an uncovered drain and fell approximately six feet to the bottom of the drain. Plaintiff felt pain primarily in his back torso area and it was later determined he had sustained fractured ribs. Plaintiff also contends he injured his right knee, but defendants have not admitted liability for plaintiff's right knee injury.
6. Plaintiff was transported by Cary EMS from the scene of the accident to WakeMed Cary Emergency Services. At that time, plaintiff's chief pain complaints concerned his left torso area. Plaintiff indicated that movement worsened the pain. After x-rays were taken of his torso area, plaintiff was assessed with three fractured ribs on his left side, the ninth, tenth and eleventh ribs, without evidence of pneumothorax and pleural effusions. Plaintiff was treated conservatively and discharged from further care.
7. Prior to July 10, 2006, Mr. Ford had problems with plaintiff's work performance. Mr. Rea, project superintendent, and Mr. Rossi, project manager, advised Mr. Ford that they *Page 5 
were having issues getting plaintiff to perform to the standards and requirements for production on the construction project. As a result, Mr. Rea and Mr. Rossi verbally counseled plaintiff regarding his sub-par work performance.
8. Plaintiff returned to work on July 11, 2006 and continued his employment up to and through the date of his termination on September 17, 2006. Although he experienced rib pain which slowed him down a bit, the pain did not prevent plaintiff from carrying out his job duties as usual.
9. Plaintiff followed up at Duke Health Raleigh Hospital on August 5, 2006. Plaintiff was treated conservatively and instructed to follow up with his family physician for further care.
10. Plaintiff was seen and evaluated at Doctors Urgent Care on August 16, 2006. The physician performed a physical examination and noted minimal ecchymosis without tenderness to palpation relative to the ribs. Plaintiff was diagnosed with a resolved rib fracture and was given a note to return to work full duty without restrictions.
11. Subsequent to July 10, 2006, Mr. Ford noted plaintiff continued to have problems with his work performance. Plaintiff made racist comments, for which he was counseled. Plaintiff failed to appropriately coordinate with subcontractors and maintain organization of the project. Plaintiff continued to have communication problems with his supervisor, Mr. Rea, and with subcontractors.
12. Plaintiff was orally counseled on two separate occasions regarding his unsatisfactory work performance. Plaintiff's testimony to the contrary is not deemed credible. Due to plaintiff's failure to carry out instructions and to meet the responsibilities of the assistant superintendent position, plaintiff was terminated on September 17, 2006. It was standard *Page 6 
procedure for defendant-employer to terminate employees without written documentation of conversations regarding poor job performance. Plaintiff was terminated for misconduct for which non-injured employees also would have been terminated.
13. At the time of plaintiff's termination, plaintiff was not under any work restrictions and had not sought additional medical care since his release to return to full duty work without restrictions on August 16, 2006.
14. Plaintiff never complained to Mr. Ford of any rib pain or other related problems and never advised defendant-employer that his rib injury or related pain was impairing his ability to perform his employment as an assistant superintendent.
15. Plaintiff was evaluated at the VA Hospital in Durham on August 9, 2006, for follow-up relative to his adult onset diabetes, hypertension, and nonischemic cardiomyopathy. The "computerized problem list" mentioned chronic back pain since March 11, 1999. It was noted that he had a fall in July 2006 with three broken ribs "now healed." Plaintiff did not complain of chronic pain but mentioned pain when coughing, turning, and with deep breathing. Otherwise, he reported no rib pain or shortness of breath and rated his pain as "zero."
16. Plaintiff returned to the VA Hospital on October 17, 2006, with reports of dental pain relative to a gum infection and swelling. There was no mention of any rib pain or knee pain or other symptoms relative to plaintiff's work injury. Plaintiff was seen at the VA Hospital on November 29, 2006, due to vision problems. Plaintiff did not follow up with the VA regarding his rib injuries through the end of the year.
17. On January 5, 2007, plaintiff returned to the VA Hospital, reporting rib pain and related symptoms. Plaintiff reported shortness of breath for two to three weeks and pain with coughing or deep breath. A diagnostic workup was completed and revealed multiple rib *Page 7 
fractures and, specifically, that the ninth and tenth rib fractures were un-united.
18. Plaintiff was referred for an orthopaedic evaluation and also to a thoracic surgeon for further evaluation. Diagnostic studies were completed and revealed non-healed fractures of the posterolateral ninth through eleventh left-sided ribs. A thoracic surgeon indicated he would not recommend surgical intervention and instructed plaintiff to return to work with no heavy lifting.
19. An independent medical evaluation was authorized with Dr. Robert Elkins at Complex Medical Evaluations, which was completed on December 12, 2007. Dr. Elkins assessed plaintiff with three to four rib fractures, which were causally related to the work injury on July 10, 2006. Two of those rib fractures, which appeared to be at the ninth and tenth ribs, were chronically un-united, which means that at least part of the rib fracture has not healed back to the other side of the rib, as it should. Dr. Elkins could not render a medical opinion as to the causal relationship of plaintiff's knee pain to the accident.
20. Dr. Elkins stated that the un-united ribs could be a source of pain for plaintiff, especially with certain movement or deep breathing. However, he did not believe that plaintiff needed a formal pain management program or any further treatment for the rib injury. Dr. Elkins agreed with the thoracic surgeon that surgery was not recommended.
21. Dr. Elkins' assessment found that plaintiff can perform medium level work with no lifting over 59 pounds on an occasional basis and 25 pounds on a frequent basis. Dr. Elkins reviewed the assistant superintendent job description and, in his opinion, plaintiff was capable of performing this job, as it fit within the work restrictions assigned by Dr. Elkins.
22. Plaintiff provided numerous pages regarding his job search, which included submission of resumes and applications to various employers. The job search records indicate *Page 8 
plaintiff faxed his resume to various telephone numbers, but there is no employer name corresponding to the fax number. The job applications plaintiff completed were falsified, which plaintiff admitted at hearing, because he did not want to show a gap in his employment. Therefore, on the applications, he indicated that he had been employed with his own company, Enterprise Builders Group, from January 2000 through December 31, 2006, even though his involvement with that business ended around January 2005.
23. Plaintiff also did not record his employment with defendant-employer on his resumes or job applications. Plaintiff never informed potential employers that he was terminated from defendant-employer for unsatisfactory work performance.
24. Plaintiff has not been able to obtain employment, and plaintiff testified he does not know why he has not procured employment. The job search records include two letters from potential employers wherein plaintiff was not offered employment for reasons unrelated to his workers' compensation injury.
25. Plaintiff's inability to obtain employment is not due to his workers' compensation injury. If plaintiff had not been terminated for unsatisfactory work performance, plaintiff would have been able to continue his employment as an assistant superintendent with defendant-employer.
26. The greater weight of the credible and competent evidence indicates plaintiff's termination on September 17, 2006, had no relationship to his workers' compensation injury. Plaintiff was terminated for misconduct and fault unrelated to his compensable injury for which a non-disabled employee would ordinarily have been terminated by defendant-employer.
27. Plaintiff is not disabled within the meaning of the North Carolina Workers' Compensation Act because he retains the ability to earn wages which he was receiving at the *Page 9 
time of his injury in the same or any other employment. Plaintiff has been unable to procure employment due to causes and conditions unrelated to his workers' compensation injury.
28. Based on the greater weight of the credible and competent medical evidence, plaintiff's rib fractures are causally related to the July 10, 2006 accident.
29. Based on the greater weight of the medical evidence, plaintiff's right knee injury is not causally related to the July 10, 2006 accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On July 10, 2006, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, resulting in multiple rib fractures. Two of those fractures remain un-united. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to have defendants provide all medical compensation arising from plaintiff's multiple rib fractures resulting from the July 10, 2006 accident. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. Plaintiff's right knee injury is not causally related to the July 10, 2006 injury by accident and is therefore not compensable. Click v.Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
4. Plaintiff has the burden of proving disability, which is defined as the incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683
(1982), Russell v. Lowe's Prod. Distrib., 108 N.C. App. 762,425 S.E.2d 454 (1993). *Page 10 
5. Plaintiff's incapacity, if any, to earn wages subsequent to September 17, 2006, was not caused by plaintiff's injury, but was due to his termination for performance issues unrelated to his work injury and for which a non-injured employee would have been terminated. Seagravesv. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
6. Plaintiff is therefore not entitled to temporary total disability benefits subsequent to September 17, 2006. N.C. Gen. Stat. § 97-29;Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982);Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397
(1996); Russell v. Lowe's Prod. Distrib., 108 N.C. App. 762,425 S.E.2d 454 (1993).
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of his multiple rib fractures resulting from the July 10, 2006 injury by accident.
2. Under the law, plaintiff's claim for temporary total disability compensation benefits subsequent to September 17, 2006 must be, and is hereby, denied.
3. Defendants shall pay the costs, including the expert witness fee of $800.00 previously approved for Dr. Elkins.
This the 27th day of January, 2009.
S/__________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/__________________ PAMELA T. YOUNG CHAIR
 S/__________________ DIANNE C. SELLERS COMMISSIONER